850 F.2d 690
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED MINE WORKERS OF AMERICA, DISTRICT 31, an
unincorporated labor organization, Plaintiff-Appellant,
v.
ISLAND CREEK COAL COMPANY, INC., a corporation, Defendant-Appellee.
 No. 87-3176.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 7, 1988.
Decided: June 17, 1988.
 
 Barbara Jo Fleischauer, General Counsel (United Mine Workers of America, on brief), for appellant.
 Joe C. Ashworth (J. Steve Warren, Jackson, Lewis, Schnitzler & Krupman, on brief), for appellee.
 Before K.K. HALL, MURNAGHAN and SPROUSE, Circuit Judges.
 PER CURIAM:
 
 
 1
 United Mine Workers of America, District 31 ("union") brought this action in district court to enforce an arbitration award involving panel rights against Island Creek Coal Company ("Island Creek"). The district court granted Island Creek's motion for summary judgment on the grounds that the arbitrator's decision was silent as to its prospective application to future disputes and there were significant factual variations from the facts forming the basis of the arbitrator's decision. We reverse.
 
 I.
 
 2
 The parties in this appeal were signatories to collective bargaining agreements known as the National Bituminous Coal Wage Agreement of 1981 and 1984 ("National Agreement"). Article XXIII of these Agreements contains a binding grievance and arbitration procedure.
 
 
 3
 During the mid- to late-1970's, Island Creek acquired a large coal property in Upshur County, West Virginia, which was developed by Island Creek and was known as the Ten Mile Strip Mine and Preparation Plant. Island Creek conveyed the Ten Mile property and operations to Enoxy Coal, Inc. ("Enoxy") on January 1, 1982.[1] Enoxy became a signatory to the National Agreement on the same date.
 
 
 4
 Island Creek continued to manage, control and operate the Ten Mile Strip Mine and Preparation Plan for Enoxy under a Management and Services Agreement. Between January 1, 1982, and March 26, 1984, there was no discernible difference in supervision, management, direction of the work force and control, except that the employees were told they were now employed by Enoxy and their paychecks were drawn on Enoxy accounts. In every other respect, Island Creek operated the mine, including administering the collective bargaining agreement. In addition, employees of Enoxy who were laid off were permitted to panel at other Island Creek operations,[2] as well as Island Creek employees were permitted to panel at the Ten Mile operation.
 
 
 5
 On or about March 26, 1984, the management agreement between Enoxy and Island Creek was cancelled and Enoxy took over the direct management, control, and operation of the Ten Mile operation. At or about the same time, Enoxy implemented a layoff among its employees at the Ten Mile operation. Subsequently, the employees attempted to panel Island Creek operations. At that time, the employees were informed that Island Creek would no longer honor reciprocal panel rights between Enoxy and Island Creek operations.
 
 
 6
 The union subsequently filed a grievance concerning this denial of panel rights.[3] At or about the same time, Island Creek employees at other Island Creek operations within its Northern Division filed identical grievances at their work sites. These grievances were filed as class-action grievances by classified employees at the Alpine Preparation Plan, North Branch, Dobbin Mine, Tioga Strip Mine, Line Crew, Construction Crew, Summersville Strip Mine and Gauley Eagle No. 4 Plant, and sought the same relief as the Birch 2A grievance.
 
 
 7
 The union's grievance was submitted to arbitration. On April 14, 1985, arbitrator Paul Selby, Jr., after a complete hearing on the matter, sustained the grievances filed against Island Creek in the Birch 2A grievance. Arbitrator Selby directed Island Creek
 
 
 8
 to recognize, allow and apply the right of employees at the Ten Mile Strip Mine and the Ten Mile Preparation Plant, also known as the Upshur Surface Mine and Plant, who were employed there at, or prior to March 26, 1984, upon lay off from any such Ten Mile operations to have their names added to the panel at any operation by Island Creek.
 
 
 9
 In October of 1985, Island Creek and the union signed a settlement agreement resolving the class action grievances which were companions to the grievance decided by Arbitrator Selby. In the settlement agreement, Island Creek agreed to abide by the Selby award.
 
 
 10
 On December 26, 1985, Enoxy instituted another layoff among its employees at the Ten Mile Mine. The Enoxy employees attempted to panel to Island Creek panels but were refused. The union filed a complaint in the district court on February 13, 1986, requesting that the court enforce the Selby Arbitration Award and the settlement agreement with regard to Island Creek's refusal to permit paneling to its operations by Enoxy employees. Both parties filed motions for summary judgment. The union alleged in its motion that Island Creek had not recognized, allowed or applied the reciprocal panel rights of either the Ten Mile employees hired before March 26, 1984, or the Island Creek employees in District 31 hired before March 26, 1984. In Island Creek's motion for summary judgment, its position was that the Selby arbitration decision was not to be applied prospectively and did not afford panel rights to Enoxy employees who were laid off subsequent to March 26, 1984, nor did the Settlement Agreement entered into in October of 1985 apply to these same employees.
 
 
 11
 The district court, in granting summary judgment for Island Creek, framed the issue before it as an enforcement of the Selby Award and the settlement agreement with regard to Enoxy employees who were laid off in December, 1985. The district court found that there were arguable material factual differences between the dispute giving rise to the arbitration decision and the dispute presented to the court, and the question as to the prospective and precedential effect given to the arbitration award was itself an arbitrable question. While acknowledging in its opinion that the employees laid off on March 29, 1984, were not allowed to panel Island Creek and that the grievance filed regarding that layoff was sustained by Arbitrator Selby, the district court was silent as to the enforcement of the award as to those employees. This appeal followed.
 
 II.
 
 12
 The union argues that the district court erred in finding that there were factual differences between the dispute giving rise to the arbitration decision and the dispute presented here. The union further contends that the court erred in concluding that the arbitrator's decision was silent regarding prospective relief. The union finally argues that the arbitration award and Settlement Agreement should be enforced because they draw their essence from the National Agreement. We agree with all of these contentions, and address them seriatim.
 
 
 13
 The district court found the facts materially different at the December 26, 1985, layoff. We find no evidence in the record to support this finding. The arbitrator found, and the parties agree, that the Management Agreement between Island Creek and Enoxy ended on March 26, 1984. The first layoff occurred three days later, on March 29, 1984. The arbitration decision was issued on April 14, 1985, and the Settlement Agreement was signed on October 16, 1985. The second layoff occurred on December 26, 1985. The district court found that it is clear now that Island Creek neither owns, operates, manages, nor controls the Ten Mile Mine, and this fact alone constitutes a significant factual variation from those facts forming the basis of the arbitrator's decision. We disagree. It was clear to the arbitrator, more than a year after the agreement ended, that Island Creek did not manage, control, or operate the Ten Mile Mine, and he so found. We can see no meaningful difference between the factual situation on March 26, 1984, and that existing at the time of the December, 1985, layoff.
 
 
 14
 We likewise disagree with the district court's conclusion that the arbitrator's decision was silent regarding its prospective application to future disputes.[4] The arbitrator specifically found that:
 
 
 15
 any seniority rights acquired before or during that period by either Ten Mile employees or Island Creek employees with respect to panel transfer rights are effective, are protected by the National Agreement, and, by virtue of promises made by them in the National Agreement, are not to be abridged by Island Creek or Enoxy Coal, Inc. during the term of the agreement.
 
 
 16
 "That period" clearly refers to the time period wherein Island Creek managed the Ten Mile Mine for Enoxy. The arbitrator further specified that his "decision is that Island Creek is obligated to recognize, allow and apply the right of Ten Mile operations employees who acquired seniority rights at Ten Mile operations prior to March 26, 1984 to have their names added to the panel of Island Creek Mines under the terms of Article XVII, sections (h) and (k) upon layoff from the Ten Mile operations."
 
 
 17
 (emphasis added). It is clear from this language, and other language in the award, that the panel rights vested prior to March 26, 1984, and were to be exercised upon layoff, whenever that might happen.
 
 III.
 
 18
 Having concluded that the factual circumstances forming the basis for the arbitration award are the same as those presented in this case and that the arbitrator's award was prospective in nature, we now turn to the question of whether the arbitrator's award and the Settlement Agreement should be enforced. The standard to be considered in reviewing arbitration awards is whether the award draws its essence from the collective bargaining agreement. United States Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960). In resolving the issue of panel rights, the arbitrator interpreted Article XVII, Section (h) and (k) of the National Agreement. In his interpretation he looked to several provisions of the contract in his analysis of the contract. It is clear that he drew the award from the essence of the collective bargaining agreement and therefore the award should be enforced. Since the parties agreed to abide by the award in the Settlement Agreement of October 16, 1985, it should also be enforced. We conclude that all Ten Mile employees who were actually hired prior to March 26, 1984, and still employed there at the time they were, or in the future are, laid off are entitled to panel Island Creek operations. It is also clear that Island Creek is obligated to allow its employees[5] to try to panel for the Ten Mile operations.
 
 IV.
 
 19
 For the foregoing reasons, we reverse the judgment of the district court and remand for entry of summary judgment in favor of the union and further proceedings for a determination of Island Creek's liability for breach of its contract with the union.
 
 
 20
 REVERSED AND REMANDED.
 
 
 
 [1]
 Enoxy was formed as a joint venture between Occidental Petroleum Corporation and Ente Nazionale Idrocarburic ("ENI"), the Italian National Energy Corporation. Island Creek is a wholly-owned subsidiary of Occidental
 
 
 [2]
 Article XVII, Section (k) of the collective bargaining agreement provides in relevant part that employees laid off in a reduction in force shall be placed on the panel of the other mines of the same employer in the same UMWA district and the employee's choice of one additional UMWA district in which he was employed
 
 
 [3]
 This grievance was known as the Birch 2A Grievance because the employees attempted to panel the Birch 2A Mine
 
 
 [4]
 There can be no doubt, and both parties agree, that the arbitrator's decision applied to the Enoxy employees who were laid off on March 29, 1984. Island Creek conceded at oral argument that the arbitration award applied to these employees. Yet, they have never been allowed to panel Island Creek operations. The district court ignored this issue in its decision. This omission alone would have precluded our affirmance of the district court's grant of summary judgment in favor of Island Creek
 
 
 [5]
 Island Creek employees who were employed prior to March 26, 1984